## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

CHARLES EDWARD O'NEIL,

        Plaintiff,

v.                                     CIVIL ACTION NO.  5:07-cv-00358

UNITED STATES OF AMERICA, et al.,

        Defendants.


### MEMORANDUM OPINION AND ORDER


Plaintiff, *pro se*, brings this action against the United States and several individual medical providers pursuant to the Federal Torts Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 and *Bivens v. Six Unknown Fed. Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  His claims arise out of the alleged improper and inadequate medical care provided to him by Defendants while an inmate at FCI Beckley, in Beckley, West Virginia.  In addition to monetary damages, Plaintiff also requests injunctive relief.

By Standing Order entered on August 1, 2006, and filed in this case on June 5, 2007, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation (PF&R).  Magistrate Judge VanDervort filed his PF&R on January 22, 2008 [Docket 22].  In that filing, the magistrate judge recommended that this Court deny Plaintiff's Application to Proceed *in forma pauperis* [Docket 1], deny Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction [Docket 8], dismiss Plaintiff's Complaint [Docket 4], and remove this matter from the Court's docket.  For the reasons stated

below, the Court adopts the recommendations to dismiss Plaintiff's FTCA and due process claims, and to deny Plaintiff's motion for a temporary restraining order and a preliminary injunction. However, the Court declines to adopt the recommendations to dismiss Plaintiff's *Bivens* claim and to deny his application to proceed *in forma pauperis*.

## I.  BACKGROUND

The full factual and procedural history of this case is set forth in the PF&R.  In short, Plaintiff alleges that Defendants provided him with inadequate medical care because they delayed diagnosing and treating his serious medical conditions.  Specifically, Plaintiff alleges that upon his arrival at FCI Beckley in February of 2002, and until approximately June of 2006, he was subjected to inadequate medical treatment, including Defendants' delay in seeking emergency medical care for him, failure to prescribe proper medication, failure to refer him to medical specialists, delay in scheduling or arranging for his physician-recommended follow-up appointments, failure to inform him of possible side effects of his anti-psychotic medication, and failure to give him access to his medical records.  Based on these allegations, Plaintiff asserts an FTCA claim against the United States and the individual Defendants in their official capacity, a due process claim against Defendants Dr. Ellis, Dr. McDaniel, and Dr. McLain, and a *Bivens* claim against all Defendants in their individual capacities.

In the PF&R, the magistrate judge detailed the medical care Plaintiff received at FCI Beckley and concluded, with respect to Plaintiff's *Bivens* claim, that "it is clear that Plaintiff cannot establish that Defendants were deliberately indifferent to Plaintiff's serious medical needs."  (Docket 22 at 14.)  The PF&R found that "Plaintiff received timely and proper medical treatment[,]" and that Defendants "continued to cautiously monitor[] Plaintiff following his diagnosis with

hyperthyroidism and Graves' disease." (*Id.*) (footnotes omitted). Further, the magistrate judge stated that "Defendants sufficiently followed the treatment plans and recommendations made by specialists." (*Id.* at 15.)

Regarding Plaintiff's FTCA claim, the magistrate judge recommended dismissal of this claim because Plaintiff did not satisfy the prerequisites for filing suit against a health care provider as required by West Virginia law. Specifically, Plaintiff did not serve each defendant health care provider with a notice of claim and a screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty days prior to filing suit. *See* W. Va. Code § 55-7B-6(b).

Addressing Plaintiff's due process claim, the PF&R recommends that this Court find Plaintiff's claim to be without merit because "[i]t is clear that interests protected by the Due Process Clause of the Fifth Amendment are not implicated in this case." (Docket 22 at 15.) The magistrate judge reasoned that Plaintiff has not alleged any deprivation of a liberty or property interest because his claims of "constitutionally inadequate medical care are evaluated under the Eighth Amendment[.]" (*Id.*)

Finally, the PF&R suggests that this Court deny Plaintiff's motion for a temporary restraining order and a preliminary injunction because the Court cannot order Defendants to provide him with specialized treatment every 90 or180 days since that decision involves medical judgment and is thus not a proper subject for judicial consideration. Additionally, the magistrate judge found that denial of the motion is warranted because "Plaintiff's request for injunctive relief must fail on substantive grounds." (*Id.* at 18.)

3

*II. STANDARD OF REVIEW*

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made[,]" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Here, objections to Magistrate Judge VanDervort's PF&R were due by February 8, 2008, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Plaintiff filed his timely objections on February 6, 2008 [Docket 26].

When reviewing the portions of the PF&R *de novo*, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978). Under this liberal standard, however, and pursuant to 28 U.S.C. § 1915A(b)(1),[1] Plaintiff's Complaint may still be dismissed for failure to state a claim upon which relief may be granted "if it is clear that no relief could be granted *under any set of facts that could be proved consistent with the allegations.*" *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007) (emphasis in original) (quoting

---

[1] Section 1915A provides that the Court shall dismiss a complaint "as soon as practicable" if the Court determines that it "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(a),(b).

4

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).  Plaintiff must provide sufficient factual

allegations "to raise a right to relief above the speculative level[,]" and must "nudge" his claim

"across the line from conceivable to plausible[.]"  *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct.

1955, 1965, 1974 (2007).

### III.  OBJECTIONS TO THE PF&R

Plaintiff essentially makes four objections in response to the PF&R.[2]  First, he argues that

his FTCA claims should not be dismissed because he was not required to comply with § 55-7B-6(b)

of the West Virginia Medical Professional Liability Act.  Second, he contends that he has alleged

sufficient facts to establish deliberate indifference to his serious medical needs on three different

occasions: (a) upon his arrival at FCI Beckley; (b) following his discharge from Charleston Area

Medical Center (CAMC) on April 25, 2002; and (c) following his discharge from Raleigh General

Hospital on July 26, 2004.  Third, Plaintiff objects to the dismissal of his due process claims against

Dr. McLain, Dr. McDaniel, and Dr. Ellis because they failed to inform him of the side effects of the

antipsychotic drugs haloperidol and benztropine.  Fourth, he asserts that his motion for a temporary

restraining order and a preliminary injunction should not be denied because the balance of factors

to be considered weighs in his favor.

Finally, although not objections, the Court must address a few items that have transpired

since the PF&R was entered.  On February 19, 2008, Plaintiff filed a Motion for Leave to File an

Amended Complaint [Docket 27].  Because leave to amend must be freely given when justice so

---

[2]  When Plaintiff filed his objections, he also filed a Motion to Exceed the Twenty Page Limit for Objections to the PF&R [Docket 25].  The Court **GRANTS** Plaintiff's motion, but notes that the arguments contained therein could have easily been articulated and developed in less than twenty pages.

requires pursuant to Fed. R. Civ. P. 15(a), the Court **GRANTS** his request to amend the Complaint

and will consider his Amended Complaint as filed [Docket 27-2].

Additionally, in his objections, Plaintiff requests that he be appointed counsel.  Title 28

U.S.C. § 1915(d) provides, in pertinent part: "The court may request an attorney to represent any

[person claiming *in forma pauperis* status] unable to employ counsel . . . ."  The statute "does not

authorize coercive appointments of counsel."  *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490

U.S. 296, 309 (1989).  In *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978), the court stated:

"If it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity

to present it, the district court should appoint counsel to assist him."

In this case, the Court **FINDS** that Plaintiff does not lack the capacity to present his claim,

which is evident by his well-reasoned and well-researched objections to the PF&R.  Plaintiff has

adequately articulated the factual and legal issues presented in his case, and these issues "are not so

complicated" that Plaintiff would be unable to represent himself fairly. *See Waller v. Butkovich*, 584

F. Supp. 909, 947 (M.D.N.C. 1984).  Accordingly, his request for counsel is **DENIED**.

Having disposed of these outstanding matters, the Court will now address each of Plaintiff's

four objections in turn and any other issues raised by his Amended Complaint.[3]

---

[3]  To the extent that Plaintiff's Complaint [Dockets 4, 4-2] sets forth any other claims against any other defendants, aside from those addressed in his objections or in his Amended Complaint [Docket 27-2], the Court **FINDS** that Plaintiff has waived his right to *de novo* review by this Court and his right to appellate review by the court of appeals as to those claims and defendants. *Thomas,* 474 U.S. at 150; *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984) (holding that a failure to file timely objections to a magistrate judge's report constitutes a waiver of *de novo* review and the right to appellate review).

A.      *Plaintiff's FTCA Claim*

The magistrate judge recommended dismissal of the FTCA claim because Plaintiff did not

comply with § 55-7B-6(b) of the West Virginia Medical Professional Liability Act, *i.e.* he did not

file a screening certificate of merit.[4]  Plaintiff objects and argues that he is excused from filing a

certificate of merit because W. Va. Code § 55-7B-6(c) provides that a plaintiff need not file a

screening certificate of merit when his cause of action is "based upon a well-established legal theory

of liability which does not require expert testimony supporting a breach of the applicable standard

of care[.]"[5]  In such a case, a plaintiff must only file "a statement specifically setting forth the basis

---

[4]  W. Va. Code § 55-7B-6(b) states, in pertinent part:

> At least thirty days prior to the filing of a medical professional liability action against
> a health care provider, the claimant shall serve . . . a notice of claim on each health
> care provider the claimant will join in litigation. The notice of claim shall include a
> statement of the theory or theories of liability upon which a cause of action may be
> based, and a list of all health care providers and health care facilities to whom notices
> of claim are being sent, together with a screening certificate of merit. The screening
> certificate of merit shall be executed under oath by a health care provider qualified
> as an expert under the West Virginia Rules of Evidence and shall state with
> particularity: (1) The expert's familiarity with the applicable standard of care in
> issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable
>  standard of care was breached; and (4) the expert's opinion as to how the breach of
> the applicable standard of care resulted in injury or death. A separate screening
> certificate of merit must be provided for each health care provider against whom a
> claim is asserted. The person signing the screening certificate of merit shall have no
> financial interest in the underlying claim, but may participate as an expert witness
> in any judicial proceeding.

[5]  This statute states in full:

> Notwithstanding any provision of this code, if a claimant or his or her counsel,
> believes that no screening certificate of merit is necessary because the cause of
> action is based upon a well-established legal theory of liability which does not
> require expert testimony supporting a breach of the applicable standard of care, the
> claimant or his or her counsel, shall file a statement specifically setting forth the

(continued...)

of the alleged liability of the health care provider." *Id.*

Relying on *Johnson v. United States*, 394 F. Supp. 2d 854, 858 (S.D. W. Va. 2005) (Chambers, J.), Plaintiff argues that he is excused from filing the screening certificate of merit under § 55-7B-6(b) because his claims are "based upon a well-established legal theory of liability[,]" and his Standard Form 95 (SF-95) satisfies the "statement of liability" requirement under § 55-7B-6(c).

Plaintiff's reliance on *Johnson* is misplaced.  Although the court in *Johnson* held that the statements contained in the plaintiffs' SF-95 were sufficient to meet the requirements of § 55-7B-6(c), it did so because plaintiffs' theory of liability was based upon a well-established legal theory that *did not require* an expert to show a breach of the standard of care.  394 F. Supp. 2d at 859 (noting that the plaintiffs argued that § 55-7B-6(c) "applies because their 'action is based upon a well-established legal theory of liability' and that an expert is not required to show a breach of the standard of care").  After all, the plain language of the exception states that no screening certificate of merit is necessary when a cause of action "is based upon a well-established legal theory of liability *which does not require expert testimony* supporting a breach of the applicable standard of care[.]"  W. Va. Code § 55-7B-6(c) (emphasis added).

Thus, reading *Johnson* in conjunction with the statute, a statement on an SF-95 is sufficient when liability is based upon a well-established legal theory and expert testimony is unnecessary. *Id.*; *see also Stanley v. United States*, 321 F. Supp. 2d 805, 808-09 (N.D. W. Va. 2004).  Unfortunately for Plaintiff, that is not the case here.

---

[5](...continued)
> basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

W. Va. Code § 55-7B-6(c).

The West Virginia Supreme Court of Appeals has held that "[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." Syl. pt. 3, *Banfi v. Am. Hosp. for Rehab.,* 529 S.E.2d 600 (W. Va. 2000). Despite this general rule, however, the Court need not require expert testimony where the "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to *noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience*." Syl. pt. 4, *Banfi*, 529 S.E.2d 600 (emphasis added).

Based on the allegations in Plaintiff's Complaint and Amended Complaint, the Court **FINDS** that the medical issues and alleged breaches contained therein "relate to complex matters of diagnosis and treatment that are not within the understanding of lay jurors by resort to common knowledge and experience." *Farley v. Shook*, 629 S.E.2d 739, 745 (W. Va. 2006). In other words, the lack of medical care in this case is not as obvious as was the case in *Johnson* where the doctor "implanted a too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." 394 F. Supp. 2d at 858. Here, Defendants provided Plaintiff with a significant amount of medical care and attention during the time in question. Any finding that the treatment Plaintiff received fell below the applicable standard of care and caused Plaintiff's injuries must be supported by expert testimony because the treatment and diagnosis of "Graves' disease, hyperthyroidism, congestive heart failure, and cardiomyopathy," are not within the understanding of lay jurors by resort to common knowledge and experience. *Farley*, 629 S.E.2d at 745.

Because expert testimony is required, Plaintiff may not circumvent the requirement of filing a certificate of merit simply by filing a SF-95, and Plaintiff's reliance on *Johnson* is without merit.

9

Thus, his first objection is **OVERRULED**, and Plaintiff's FTCA claim against the United States and

the individual Defendants in their official capacities is **DISMISSED WITHOUT PREJUDICE**.

>       B.       *Plaintiff's Bivens Claim*

Plaintiff objects to the recommendation to dismiss his *Bivens* claim against Defendants Dr.

McLain, Dr. Rehberg, Dr. Rasheed, Kaiser, Kirkland, Taylor, and S. Rose, and argues that he has

alleged enough facts to show that those Defendants failed to provide him with constitutionally

adequate medical care.[6] At this juncture of the proceedings, the Court agrees with Plaintiff and will

permit his *Bivens* claim against those defendants, and Defendants Anderson, Russell, Engels, and

---

[6] In Plaintiff's Amended Complaint, he includes Defendants Anderson, Russell, Engels, K. Rose, Dr. Ellis and Dr. McDaniel in his *Bivens* allegations. Therefore, the Court will consider Plaintiff's claims against them as well. Notably, Defendants Anderson, Russell, and Engels are supervisory officials, not medical providers. A supervisory prison official "cannot be held liable for the medical decisions made by his staff unless he independently demonstrated deliberate indifference." *Coppage v. Mann*, 906 F. Supp. 1025, 1043 (E.D. Va. 1995). This means that a supervisory official may only be liable for the constitutional violations of medical subordinates when the plaintiff shows: 1) that the supervisor was actively or constructively aware of a pervasive, unreasonable risk of harm from a specified source; 2) the supervisor was deliberately indifferent to that risk; and 3) that there exists an affirmative causal link between the supervisor's inaction and a constitutional injury. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). Other courts have held that "where a supervisor's 'involvement went beyond merely the receipt of complaint letters,' to responding, explaining the treatment and defending the institution,' personal involvement was established." *Woods v. Goord*, No. 01-3255, 2002 U.S. Dist. LEXIS 7157, at*28-33 (S.D.N.Y. Apr. 24, 2002) (citations omitted). Thus, because the Complaint and Amended Complaint allege that Anderson, Russell, and Engels did more than receive Plaintiff's letters and had "personal knowledge and involvement in deliberately delaying to refer [P]laintiff to a specialist to conduct the follow-up treatment plans prescribed by Dr. S. Hasan[,]" (Docket 27-2 at 6.), the Court will permit his deliberate indifference claim against them. Additionally, the Court **FINDS** that Plaintiff states a claim against K. Rose for failure to document Plaintiff's medical complaints. *See Dawson v. Kendrick*, 527 F. Supp. 1252, 1306-07 (S.D. W. Va. 1981). However, Plaintiff's allegations in his Amended Complaint for deliberate indifference against Dr. Ellis and Dr. McDaniel for refusal to discontinue a course of treatment knowing that it was causing Plaintiff's mental state to degenerate are without merit. These alleged facts do not support a finding of deliberate indifference on their part. Likewise, Plaintiff has no claim against them or Dr. McLain for his allegations that they prescribed him antipsychotic medications without a license because the exhibits attached to his Complaint indicate that those medications were prescribed by a contract psychiatrist. (*See* Docket 4-14 at 9, ex. IIII.)

K. Rose to go forward as Plaintiff's allegations raise his right to relief above the speculative level. *Twombly*, 127 S. Ct. at 1965, 1974.

*(1)     Applicable Law*

To establish an Eighth Amendment cause of action against a prison official for deliberate indifference to a serious medical need under *Bivens*, Plaintiff must satisfy a two-part test.  This test consists of an objective component and a subjective component.  First, Plaintiff must prove that the alleged deprivation of medical care was, "objectively, 'sufficiently serious.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Next, Plaintiff must show that the prison official had "a sufficiently culpable state of mind." *Wilson,* 501 U.S. at 302-03. This subjective prong requires the official to know of and disregard "an excessive risk to inmate health . . . ." *Farmer*, 511 U.S. at 837.  To determine whether the official acted with the requisite degree of culpability, the official must be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Neither mere malpractice, *Estelle*, 429 U.S. at 105-06, nor mere negligence in diagnosis state an eighth amendment claim.  *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986).  Rather, to be actionable, the treatment, or lack thereof, "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Importantly, with respect to this case, "[c]ourts have held that a prison official's delay in scheduling appointments and failure to follow orders of a doctor constitutes denial of adequate medical care."  *Woods v. Goord*, No. 01-Civ. 3255, 2002 U.S. Dist. LEXIS 7157, at *14-15 (S.D.N.Y. Apr. 24, 2002) (unpublished) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)

("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors."); *Brown v. Coughlin*, 758 F. Supp. 876, 882-83 (S.D.N.Y. 1991)).

Here, like the magistrate judge, the Court will assume for purposes of this analysis that Plaintiff's medical needs were sufficiently serious. Thus, the inquiry becomes whether Plaintiff has made sufficient factual allegations to show that Defendants Dr. McLain, Dr. Rehberg, Dr. Rasheed, Kaiser, Kirkland, Taylor, Anderson, Russell, S. Rose, and K. Rose were deliberately indifferent to those needs.

In his objections, Plaintiff focuses the Court's attention on three different instances of deliberate indifference. First, upon his arrival to FCI Beckley in February of 2002, Plaintiff claims that Dr. McLain, Kaiser, Dr. Rehberg, and Dr. Rasheed had knowledge of Plaintiff's serious medical problems but ignored his complaints and failed to seek emergency care when it was needed, which resulted in him being admitted to the hospital when his condition worsened. It is well-settled that failure to seek emergency care when it is obviously needed states a claim for deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Therefore, Plaintiff has alleged enough facts to raise his right to relief above the speculative level and the Court declines to adopt the recommendation to dismiss Plaintiff's *Bivens* claims against Defendants Dr. McLain, Kaiser, Dr. Rehberg, and Dr. Rasheed for their failure to provide him with emergency care.

Next, Plaintiff claims that following his discharge from CAMC on April 25, 2002, Defendants Dr. McLain, Dr. Rehberg, Kirkland, and Taylor failed to follow Plaintiff's treating doctor's orders and intentionally interfered with Plaintiff's prescribed treatment plans which called for follow-up appointments and an "I-123 uptake and scan." Similarly, after Plaintiff's discharge from Raleigh General Hospital on July 26, 2004, Plaintiff asserts that Dr. McLain, Dr. Rasheed,

12

Kirkland, Kaiser, and Taylor intentionally interfered with Dr. Hasan's prescribed treatment plan for his thyroid and heart conditions. Thus, "[a]lthough the proof may show otherwise," Plaintiff's allegations state a claim of deliberate indifference based on these defendants' interference with his physician-ordered medical treatment and follow-up appointments. *Woods*, 2002 U.S. Dist. LEXIS 7157, at *14-15. Thus, Plaintiff's objection insofar as it relates to his *Bivens* claim against Dr. McLain, Dr. Rasheed, Kirkland, Kaiser, and Taylor is **SUSTAINED**, and the Court declines to adopt the recommendation to dismiss that claim against them and, as mentioned above, Defendants Anderson, Russell, Engels, and K. Rose. *See supra* n.6.

> C.      *Plaintiff's Due Process Claim*

With respect to Plaintiff's due process claim, the magistrate judge recommended dismissal because the interests protected by due process are not implicated in this case. In his objections, Plaintiff contends that the magistrate judge incorrectly construed his due process claim based on a lack of medical treatment, when he should have evaluated his due process claims based on the failure of Defendants Dr. McLain, Dr. McDaniel, and Dr. Ellis to inform him of the side effects of the antipsychotic drugs he was prescribed: haloperidol and benztropine. Liberally construing Plaintiff's Complaint and Amended Complaint, as the Court must, the Court **FINDS** that Plaintiff indeed alleges a violation of the right to medical information under the Fifth Amendment. Thus, Plaintiff's objection to the PF&R is **SUSTAINED** insofar as the Court will conduct a *de novo* review of his allegations to determine whether he has stated a valid claim sufficient to overcome dismissal pursuant to § 1915A(b)(1).

In order to establish a violation of this right, Plaintiff must allege facts that "show that (1) government officials failed to provide him with such information; (2) this failure caused him to

undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with *deliberate indifference to the prisoner's right to refuse medical treatment*." *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (emphasis added).

Despite Plaintiff's allegations that Defendants failed to provide him with the appropriate medical information, and despite his allegations that he would have refused treatment had he been informed of the drugs' side effects, Defendants are required to have acted with deliberate indifference, and there is simply no allegation of any such intent. For example, Plaintiff does not allege that any defendant acted with the intent to induce him to undergo treatment that he otherwise might have declined. *See id.* (holding that there were allegations to imply that the defendants acted with deliberate indifference when doctors were fully aware of the side effects and informed the plaintiff that there were none). In fact, Plaintiff alleges that the doctors were "trying to help him." (Docket 4-2 at 21.) Furthermore, a review of the exhibits attached to the Complaint reveals that Defendants did supply Plaintiff with information concerning the drugs. (*See* Docket 4-14, ex. IIII.) Although Plaintiff claims he was not "in his right frame of mind" when this information was provided to him, that has no affect on whether Defendants acted with deliberate indifference. As such, Plaintiff's due process claim against Defendants Dr. McLain, Dr. McDaniel, and Dr. Ellis is **DISMISSED**.[7]

---

[7] In his Amended Complaint, Plaintiff alleges that Defendants McLain, Kirkland, Thompson, Franco, Lipps, and Engels, refused to release copies of his requested medical records. Plaintiff also references this argument in his objections. "A prisoner has no constitutional right of access on demand to his medical records to search them for a possible medical malpractice claim." *Mejia v. Bureau of Prisons*, No. C-05-543, 2006 U.S. Dist. LEXIS 31639, at *3 (S.D. Tex. Apr. 19, 2006). However, "[p]risoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting." *White v. Napoleon*, 897
(continued...)

> D.      *Motion for a Temporary Restraining Order and a Preliminary Injunction*

In Plaintiff's motion for a temporary restraining order and a preliminary injunction, he requests that the Court enter an order directing Defendants to provide him with examinations by an endocrinologist and cardiologist every 90 or 180 days.  Further, he requests an injunction generally enjoining Defendants from harassing his witnesses.  Magistrate Judge VanDervort recommended this Court deny Plaintiff's motion because he found that the Court "simply cannot consider Plaintiff's request that the Court enter an Order directing the Defendants" to provide him with specialized medical treatment because to do so would "entail consideration of matters involving medical judgment which are not proper subjects for judicial consideration."  (Docket 22 at 17-18.) Also, the magistrate judge found "that Plaintiff's request for injunctive relief must fail on substantive grounds."  (*Id.* at 18.)

Plaintiff objects and contends that he has sufficiently shown that the balance of hardships weighs in his favor and that there is a likelihood of irreparable harm to him in the form of pain, discomfort, weight loss, chest pains, infection and congestive heart failure, and that likelihood of harm to Defendants is minimal.

---

[7](...continued)
F.2d 103, 113 (3d Cir. 1990).  Although Plaintiff claims that he has been refused access to his medical records, the exhibits attached to his Complaint show that a significant amount of records have been released. (*See* Docket 4-14, ex. IIII.)  Furthermore, as noted above, from the exhibits, it appears that Plaintiff was provided with the information reasonably necessary to make an informed decision about whether to accept treatment prior to it being given to him.  His subsequent requests for copies of his medical records are irrelevant.

In determining whether injunctive relief is appropriate,[8] the Court should consider four

factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

(2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood the

plaintiff will succeed on the merits; and (4) the public interest. *Rum Creek Coal Sales, Inc. v.*

*Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). "[T]he two most important are those of probable

irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an

injunction is issued." *N.C. State Ports Auth. v. Dart Containerline Co.*, 592 F.2d 749, 750 (4th Cir.

1979).

Importantly, functions of prison management must be left to the broad discretion of prison

administrators. *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Further, courts should grant

preliminary injunctive relief involving the management of prisons only under exceptional and

compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 n.2 (4th Cir. 1994).

Based on the applicable standard, Plaintiff has failed to meet his burden. Although Plaintiff

alleges that he will suffer "irreparable" harm, the exceptional and compelling circumstances required

to issue injunctive relief do not exist in this case. Many of the allegations in Plaintiff's Complaint

and Amended Complaint occurred several years ago, and there appears to be no imminent threat to

Plaintiff's medical condition since he does not allege that Defendants have ceased to provide him

with any medical care. *See Los Angeles v. Lyons*, 461 U.S. 95 (1983). As Plaintiff notes, "[h]e has

---

[8] Although Plaintiff requests a temporary restraining order, such an order would only last until a
hearing on the preliminary injunction could be arranged. Fed. R. Civ. P. 65(b). Because the Court
determines that Plaintiff is not entitled to a preliminary injunction, there is no basis upon which to
grant him a temporary restraining order as there is no difference between the governing standards
for a temporary restraining order and a preliminary injunction. *Dotson v. Wells Fargo Bank, N.A.*,
2:06-1041, 2006 U.S. Dist. LEXIS 92278, at *7 (S.D. W. Va. Dec. 20, 2006).

received some medical treatment for his injuries[,]"[9] and does not allege that Defendants have created any harm that could not be compensated through monetary relief. *See Sampson v. Murray*, 415 U.S. 61, 90 (1964) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").  Simply put, the resulting harm of not being examined by specialists every 90 to 180 days is not enough to tip the balance in his favor.

Moreover, with respect to Plaintiff's request that Defendants be enjoined from harassing his witnesses, Plaintiff has not made any specific allegations against them and therefore has not established an imminent threat of irreparable harm. *See Cont'l Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356 (3d Cir. 1980).

Thus, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's motion for a temporary restraining order and a preliminary injunction [Docket 8] and **OVERRULES** his objection.

### IV.  CONCLUSION

For the reasons stated above, the Court **ADOPTS** in part the PF&R.  Specifically, the Court **ORDERS** that: (1) Plaintiff's FTCA claim against the United States and the individual Defendants in their official capacity be **DISMISSED WITHOUT PREJUDICE**; (2) Plaintiff's due process claim be **DISMISSED**; and (3) Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction [Docket 8] be **DENIED WITHOUT PREJUDICE**.  However, the Court **DECLINES** to adopt the recommendation to dismiss Plaintiff's *Bivens* claim against Defendants Marty Anderson, Dr. Dominick McLain, Dr. N. Rehberg, Dr. Syed Rasheed, Kenneth Kaiser, Jerri Kirkland, Sherri Taylor, Scotty Rose, K. Rose, Richard H. Russell, and Sue Engels.  Accordingly,

---

[9]  (Docket 8 at 18.)

17

the Clerk is **DIRECTED** to **TERMINATE** the remaining Defendants and **REFER** this matter back

to the magistrate judge for further proceedings.  Furthermore, the Court hereby: (1) **GRANTS**

Plaintiff's Motion to Exceed the Twenty Page Limit for Objections to the PF&R [Docket 25]; (2)

**GRANTS** Plaintiff's Motion for Leave to File an Amended Complaint [Docket 27]; and (3)

**DENIES AS MOOT** Plaintiff's Motion to Expedite [Docket 17].

　　　Finally, the Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and

Order to counsel of record, Plaintiff, *pro se*, and Magistrate Judge VanDervort.

　　　　　　　　　　ENTER:　　　March 31, 2008

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE